UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE BOEING COMPANY, AS SPONSOR AND FIDUCIARY OF THE BOEING COMPANY REPRESENTED ACTIVE HMO,<br><br>Plaintiff,<br><br>vs.<br><br>LINDA THURMON AND THE FLOYD LAW FIRM, P.C.,<br><br>Defendants. | Civil Action No.<br>4: 09CV01456 DDN |

## DEFENDANTS MOTION TO DISMISS

COME NOW Defendants, and for their Motion to Dismiss, state as follows:

Under Federal Rule 12(b)(6), this court is authorized to dismiss a complaint because it fails to state a claim upon which relief can be granted. Under this rule, the court must assume as true all factual allegations made by the plaintiff. Defendants respectfully submit that, even assuming arguendo that plaintiff's factual allegations are true, the complaint in this case fails as a *matter of law* in four respects. The first three grounds, each one in and of itself capable of sustaining a 12(b)(6) dismissal, are a result of plaintiff's failure to satisfy elements required by 29 U.S.C. § 1132(a)(3) as set forth by the U.S. Supreme Court in *Sereboff v. Mid Atlantic Medical Services, Inc.*, 126 S.Ct. 1869, 74 USLW 4240, 164 L.Ed.2d 612 (May 15, 2006) and subsequent federal case law. The fourth ground is founded on the application of Missouri law (prohibiting subrogation on personal injury claims) under ERISA's "saving clause," 29 U.S.C.

1144(b)(2)(A) to this Plaintiff's claim.

## I. Plaintiff's complaint fails, as a matter of law, because it does not seek the enforcement of a "contractual lien."

The U.S. Supreme Court has declared that an action for reimbursement 29 U.S.C. § 1132(a)(3) is not permitted if it is one sought to enforce a right of subrogation/reimbursement but only if it is an action to enforce a contractual lien. In *Sereboff v. Mid Atlantic Medical Services, Inc*, 547 U.S. 356, 126 S. Ct. 1869, 164 L. Ed.2d 612 (2006), the Court specifically rejected the idea that subrogation is a form of "equitable relief," but instead held that "equitable relief" is possible only if the plan language creates a lien. In holding that the plan could pursue an ERISA claim for reimbursement in *Sereboff*, the Court stated:

> . . . Mid Atlantic's claim is not considered equitable because it is a subrogation claim. . . . Mid Atlantic's action to enforce the "Acts of Third Parties" provisions qualifies as an equitable remedy because it is indistinguishable from an action to enforce an equitable lien established by agreement . . . . Under the teaching of *Barnes* and similar cases, Mid Atlantic's action in the District Court properly sought "equitable relief" under § 502(a)(3) [of ERISA] . . . .

126 S. Ct. at 1877-78.

**The plan document fails to create a lien.** Essential to the holding in the *Sereboff* case was the fact that the plan document itself actually created a lien by its very terms – something which the Summary Plan Description ("SPD") in this case fails to do. Contrary to the plan in *Sereboff*, none of the SPD provisions actually *create a lien*. A thorough review of the "Subrogation and Reimbursement" provision found on pp. 59-60 of the plaintiff's attached Summary Plan Description ("SPD") reveals that the

2

word "lien" is completely absent. The provisions in plaintiff's SPD set forth a contractual right of subrogation or reimbursement, but do not create a lien.

**Plaintiff's complaint fails to allege that the beneficiary ever signed or was even requested to sign a document giving plaintiff a written lien.** It is also noteworthy that the plaintiff, by the terms of its SPD, had the ability to request the beneficiary to execute a "lien" document. In the 8th line down under the caption, "Subrogation and Reimbursement," the SPD provides, "you may be asked to sign and deliver information and documents necessary for us to protect our right to recover Benefit payments made to you." No request was ever made to the defendants to sign such a lien agreement. For the purpose of this 12(b)(6) motion [in which the court is required to accept plaintiff's factual allegations as true], it should be noted that plaintiff's complaint does not allege that the beneficiary ever signed or was ever requested to sign a lien agreement.

**Plaintiff's complaint does not seek the enforcement of an existing lien (as required by Sereboff) but rather requests the imposition of an equitable lien.** Nowhere in Plaintiff's complaint is the assertion that a contractual lien exists. Paragraph 32(a) and the plaintiff's prayer for relief (a) both request the "imposition of a constructive trust or equitable lien." Under the law established in *Sereboff*, a reimbursement action must seek the enforcement of an existing lien created by contract.

In *Popowski v. Parrott*, 461 F.3d. 1367 (11th Cir. 2006), the court considered the consolidated case of *BCBS v. Carillo*. In the *Carillo* appeal (the resolution of which is

consolidated into the *Popowski* opinion), the Eleventh Circuit ruled for the beneficiary because there was no language specifically creating a lien against the tort recovery. The language from the plan documents in *Parrott* and *Carillo* was contrasted in the opinion. The plan language in *Carillo* was fairly typical of some common plan documents, but it failed to actually establish a lien and therefore failed to satisfy the requirements of *Sereboff*. The language did create an obligation to repay in the event of recovery of a tort settlement. But the recovery of the tort settlement served only as a "trigger" to impose the obligation, and the plan language was otherwise insufficient to actually create a lien on the settlement proceeds. Consequently, reimbursement was denied.

Additionally, the rule of law set forth in *Popowski v. Parrott* was recently endorsed by the federal district court handling the Vioxx litigation. In *In re Vioxx Products Liability Litigation*, 45 Employee Benefits Cas. 1192, 2008 WL 3285912 (E.D. La) (Aug. 7, 2008), multiple plaintiffs professing to be self-funded ERISA plan administrators and sponsors filed suit to enjoin the Vioxx settlement distributions, so as to allow the plans the opportunity to perfect their reimbursement claims against their beneficiaries. The federal court denied relief in a lengthy opinion which, *inter alia*, stressed the need for plan language to actually create a lien as established in *Popowski v. Parrott*. The federal district court opinion was upheld by the Fifth Circuit in *Avmed Inc., et al. v. Browngreer PLC, et. al.*, 300 Fed. Appx. 261, 2008 WL 4909535 (November 17, 2008).

## II. Plaintiff's claim fails because it is not an equitable claim asserted against a "specifically identifiable fund."

The Plaintiff fails to state a claim for relief because this action is not brought against a "specifically identifiable fund" as required *by Sereboff v. Mid Atlantic Medical Services, Inc.*, 126 S.Ct. 1869, 74 USLW 4240, 164 L.Ed.2d 612 (May 15, 2006) and subsequent federal case law. In this case plaintiff asserts that "on information and belief" settlement monies may exist.

Plaintiff's claim must assert the existence of a specifically identifiable fund in possession of the defendants. Again, this rule traces to the holding by the U.S. Supreme Court in the *Sereboff* case wherein the Court's previous decision in *Great West Life & Annuity Insurance Co. v. Knudson,* 534 U.S. 204 (2002) [disallowed a reimbursement claim] was distinguished because the plaintiff's claim in *Sereboff* "sought 'specifically identifiable funds' that were 'within the possession and control of the Sereboffs.'" Page 5, *Sereboff* slip opinion, 126 S.Ct. at 1874.

A claim, such as the one lodged here – brought on "information and belief" – has been held to be inadequate. In the recent decision handed down on July 20, 2009 by the U.S. District Court for the Northern District of California in *Martorello v. Sun Life Assurance Company of Canada*, 2009 WL 2160652, the court dismissed such a claim. The *Martorello* court held that an ERISA Plan's claim for reimbursement does not satisfy the requirement of § 502(a)(3)(B) when that claim is brought on the theory of restitution and makes the conclusory assertion that "on information and belief" there are identifiable funds in the beneficiary's possession and control traceable to the plan's

claim. The Court stated that the plan "has not met its burden in establishing more than the 'mere possibility' that it is entitled to relief." The theory asserted by plaintiff in this case is, similar to the theory asserted in Martorello, is premised upon the notion that the beneficiary has been "unjustly enriched." Paragraph 29 of plaintiff's complaint. The clear holding of *Great West Life & Annuity Insurance Co. v. Knudson,* 534 U.S. 204 (2002) is that a claim based upon restitution or unjust enrichment in a reimbursement context is a legal claim, not cognizable under 29 U.S.C. § 1132(a)(3).

Results similar to that found in *Martorello* can be found in each of the following cases where an ERISA Plan's claim is dismissed because it is not lodged against a specifically identifiable fund:

In *UFCW Local 1776 v. DeBoer*, 2008 WL 4367485 (E.D.Pa.) the federal district court released attorneys from a suit filed by an ERISA plan. The attorneys turned recovery proceeds over to the client. The court holds that there is no actionable claim by the ERISA plan against these attorneys under ERISA.

In *First Unum Life Insurance Company v. Alleyne*, 2009 WL 235543, the U.S. District Court for the Eastern District of New York ruled on a request for default judgment sought by First Unum Life Insurance Company for overpayment of disability benefits. This decision upholds the *Sereboff* requirement that an action for appropriate equitable relief be maintained only against a specifically identified fund -- otherwise such an action is in the nature of a suit for a personal judgment. Although the court ruled for First Unum partially, the court specifically denied judgment for overpayment relating to the defendant's receipt of workers compensation benefits because "First

6

Unum has not identified a particular fund, as distinguished from Alleyne's general assets, on which an equitable lien may be imposed. As a result any recovery would be in the nature of legal, rather than equitable relief."

This principle was invoked in *Reichert v. Liberty Life Assur. Co. of Boston*, 2007 WL 433321 (D.N.J. Feb. 5, 2007), where the federal district court (via Judge Kugler) denied summary judgment to the long term disability insurer for an alleged overpayment on a claim. The beneficiary had supplied the court with a sworn affidavit stating that she no longer had any of the disputed funds in her possession. The court held, "Like the claim in Sereboff, the basis for Liberty's claim is equitable in nature. Under the terms of the Policy, Plaintiff owes Liberty reimbursement for overpayment of benefits. However, this case differs from *Sereboff* in that Plaintiff claims she no longer has any of the back benefits from SSDI in her possession. It is no longer in a specially identifiable fund as the funds were in *Sereboff*. Therefore, imposition of liability on Plaintiff for this money would be of a legal nature, resulting in personal liability, and not an equitable remedy. As a result, the court denied summary judgment with regard to Liberty's cross-claim for reimbursement."

The following cases also support the requirement that there be a specifically identifiable fund: *Killian v. Johnson & Johnson*, 2008 WL 2559307, (E.D. N.J. -- July 1, 2008); *Security Mutual Life v. Joseph*, 2007 WL 1944345 (E.D. Pa. -- July 2, 2007); *Mills v. London Grove Township*, 2007 WL 2085365 (E.D.Pa.); *Digiacomo v. Prudential Ins. Co. of America*, 2007 WL 2284789 (D.N.J. 2007 -- August 10, 2007); *In re U.S. Airways, Inc., Debtor, US Airways, Inc. v. Ruggiero*, 2007 WL 2416536; *Union Labor*

*Life Insurance Co. v. Olsten Corporation Health and Welfare Benefit Plan*, 2008 WL 817112 (E.D.N.Y. 3/26/08); *Isabella v. Express Prods. 401(k) Plan*, 2009 U.S. Dist. LEXIS 16788 (E.D. Pa. Mar. 4, 2009); *Bd. of Trs. for the Laborers Health & Welfare Trust Fund v. Hill*, 46 Employee Benefits Cas. (BNA) 1215 (N.D. Cal. Nov. 25, 2008); and *Avmed Inc. v. Browngreer PLC*, 300 Fed. Appx. 261 (5th Cir. La. 2008) (unpublished).

**III. The Plaintiff's claim fails because it is premised on overreaching language which fails to specify a particular fund, distinct from the beneficiary's general assets, as required by *Sereboff*'s prescribed remedy for "equitable relief." [The previous point is that the Plaintiff's action itself is not being asserted against a specifically identifiable fund. This ground addresses the fact that underlying plan language is overreaching and, consequently, fails to satisfy the prescribed criteria for "appropriate equitable relief" even if the Plaintiff's claim were properly asserted against a "specifically identifiable fund."]**

The language in this plan document overreaches and attempts to reach into the general assets of the beneficiary. In the 2nd column of Plaintiff's SPD on page 59 it states, "That our rights will be considered as the first priority claim against Third Parties, to be paid before any other of your claims are paid." It also states, "That

8

regardless of whether or not you have been fully compensated, we may collect from the proceeds of any full or partial recovery that you or your legal representative obtain." Additionally, the SPD states, "We will not pay fees, costs or expenses you incur with any claim or lawsuit, without our prior written consent." The effect of these provisions is to extend Plaintiff's claim for reimbursement into the general assets of the beneficiary.

Such overreaching provisions have been held impermissible as a claim for "appropriate equitable relief" under *Sereboff*. For example, in *Fleetwood Enterprises, Inc. v. Taylor*, 2007 WL 2826180 (W. D. Ky.) (2007), the court held that the ERISA plan could "not assert an equitable lien over any recovery received by [the beneficiary] as a matter of law" because the obligation sought to be imposed extended into the beneficiary's general assets. *Id.* at * 4. The *Fleetwood* opinion, quoting the 11th Circuit *Parrott* decision, stated at * 3:

> Here, the Fleetwood Plan's reimbursement provision states that "[t]he Plan shall have theright of first reimbursement from any recovery a covered Member receives, even if the covered Member has not been made whole." Thus, the Fleetwood Plan specifies the fund — any recovery a covered Member receives- out of which reimbursement is due to the plan. However, the Fleetwood Plan fails to specify the portion due the plan. As the Fleetwood Plan failed to identify the portion due the plan, the plan fails to meet the requirements for the assertion of an equitable lien. *See id.* at 1374.

This issue was more recently addressed in *James River Coal Company Medical and Dental Plans v. Bentley*, 2009 WL 2211906 (July 23, 2009) where the U.S. District Court for the Eastern District of Kentucky found similar plan language deficient. In this case the ERISA Plan sought to be reimbursed $25,840 paid on behalf of a minor who

sustained serious injuries when attacked by a dog. The tort recovery was $70,000. Despite the fact that this plan document purported to grant the plan "a lien in the proceeds of any such recovery," the court nonetheless dismissed the complaint because the plan failed to identify a particular fund from which the plan is to be reimbursed. The Court held as follows:

> In this instance, in requiring reimbursement "until the Plan has been fully reimbursed for benefits it paid for or provided" whenever a Plan member recovers from a third party, the reimbursement is not necessarily connected to a specific fund. The Plan does not specify that it is to be reimbursed only from the proceeds of the recovery until it has been fully reimbursed for benefits previously paid. This creates the possibility that a Plan member may receive a recovery from a third party that is less than the benefits paid by the Plan but would nevertheless be required to repay the Plan in full. Because the reimbursement could exceed the recovery in this situation, the Plan language clearly contemplates recovery out of the Plan member's general assets rather than a particular fund tied to the recovery. Thus, the Plan language creates personal liability on the part of the Plan member for the amount of the benefits rather than an equitable lien or constructive trust on particular property or funds tied to the recovery from the third party.

**IV. Plaintiff's complaint is not sustainable because Missouri law (prohibiting subrogation on personal injury claims) applies through the application of ERISA's "saving clause."**

**A. Health care coverage offered through an HMO arrangement under ERISA must comply with state law which regulates insurance by virtue of ERISA's *saving clause*.**

Plaintiff's suit is brought as "Sponsor and Fiduciary of The Boeing Company Represented Active HMO." The fact that this plan operates as an HMO is revealed in the SPD which is attached to plaintiff's complaint. The title page clearly indicates "The Boeing Company Represented Active HMO Effective 1, 2004." Additionally, located at the bottom of each and every page of the SPD following the title page, the following is stated:

> "Boeing HMO SPD-ACT UNION-eff010102
> Boeing---Represented Active HMO"

Under ERISA's *preemption clause*, 29 U.S.C. 1144 (a), "any and all State laws ... that ... relate to any employee benefit plan" are superceded and preempted. There is no issue in this case with ERISA's *preemption clause*.

What does come into play in this case, however, is ERISA's *saving clause*, 29 U.S.C. 1144 (b)(2)(A), which provides as follows:

> Except as provided in subparagraph (B), *nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance*, banking, or securities. (emphasis added)

In the facts of this case – where health insurance coverage is provided by an ERISA plan through an HMO arrangement in Missouri – that coverage is subject to Missouri law which regulates insurance. Missouri law prohibits subrogation on personal injury claims. As a result of ERISA's *saving clause*, Plaintiff's claims are not sustainable as a matter of law.

The matter of HMOs being subject to state regulatory law has been taken up by U.S. Supreme Court in two cases. The high court first addressed the issue of whether

or not state regulatory law applied to an HMO operating under ERISA in *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002). The Court applied ERISA's *saving clause* and held that an HMO is indeed an "insurer" subject to Illinois state regulatory law requiring binding independent medical review of an HMO's decision to deny benefits. The *Rush* opinion states, *inter alia*, as follows:

> So Congress has understood from the start, when the phrase "Health Maintenance Organization" was established and defined in the HMO Act of 1973. The Act was intended to encourage the development of HMOs as a new form of health care delivery system... The Senate Committee Report explained that federally qualified HMOs would be required to provide "a basic package of benefits consistent with health insurance patterns,"... and the very text of the Act assumed that state insurance laws would apply to HMO... The Senate explanation left no doubt that it views an HMO as an insurer... In other words, one year before it passed ERISA, Congress itself defined HMOs in part by reference to risk, set minimum standards for managing the risk, showed awareness that States regulated HMOs as insurers..." 536 U.S. at 367-69, 122 S.Ct. at 2160-61.

One year later the Supreme Court decided *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003). Once again the Court invoked ERISA's *saving clause*, holding that Kentucky statutes, making it unlawful for health insurer to discriminate [as done in Kentucky through the use of exclusive healthcare provider networks] against any health care provider who is willing to comply with an insurer's terms and conditions, are laws which "regulate insurance" and, as such, are applicable to HMOs operating under an ERISA scheme.

**B. State law which prohibits subrogation on personal injury claims is a regulatory law which is saved by ERISA's *saving clause*.**

With respect to state law which prohibits subrogation on personal injury claims, the Supreme Court has ruled that such law is indeed a "regulatory law" saved by ERISA's *saving clause* in *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). *FMC Corp.* held that the Pennsylvania antisubrogation law, although preempted by the *preemption clause* of ERISA, was nonetheless saved by ERISA's *savings clause*.

There are lower court opinions which also recognize that a state's law concerning subrogation is "saved" and applicable through the ERISA's *saving clause*. For example, in *Benefit Recovery, Inc. v. Donelon*, 2008 WL 642972 (C.A.5 (La.)), 43 Employee Benefits Case. 1417, (cert denied 10/6/08) the 5th Circuit Court of Appeals rendered a decision involving a directive entered by the Louisiana Commissioner of Insurance.  The Commissioner's directive required that insurers comply with the make-whole doctrine.   The Commissioner had rejected a form tendered by a health plan for non-compliance and was sued by Benefit Recovery.  The federal trial court and the 5th Circuit upheld the action of the Louisiana Commissioner.  In particular this 5th Circuit opinion holds that this Insurance directive is "state law which regulates insurance" and is thereby saved by ERISA's saving clause and is applicable to insurers providing coverage to ERISA plans.

Similarly in *Singh v. Prudential Health Care Plan, Incorporated*, 335 F.3d 278 (4th Cir. 2003), the court held that the subrogation prohibition found in Maryland HMO statute was "saved" from preemption under the *saving clause* and also escapes the argument of "complete preemption."  The court stated, "… we conclude that the

subrogation prohibition of the Maryland HMO Act applicable before June 2000 is a state-law regulation of insurance that is saved from preemption under § 514(b)(2)(A). ... [I]t is difficult to imagine an antisubrogation law of this type as anything other than an insurance regulation, as it addresses who pays in a given set of circumstances and is therefore directed as spreading policyholder risk." 335 F.3d at 286 [4].

### C. Missouri law prohibits subrogation on personal injury claims and is applicable in this case.

Missouri courts have consistently found that, as a matter of public policy, subrogation on personal injury claims is unlawful. The point of origin on this body of law in Missouri is *Travelers Indem. Co. v. Chumbley*, 394 S.W.2d 418 (Mo.Ct.App. 1965) and has been repeatedly upheld by Missouri courts. *Chumbley in Forsthove v. Hardware Dealers Mut. Fire Ins. Co.*, 416 S.W.2d 208 (Mo.App. 1967); *Jones v. Aetna Casualty & Surety Co.*, 497 S.W.2d 809 (Mo.App. 1973); *Farmers Insurance Company v. McFarland*, 976 S.W.2d 559 (Mo.App.W.D. 1998); *Hays v. Missouri Highways and Transportation Commission*, 62 S.W.3d 538 (Mo.App, W.D. 2001); *Waye v. Bankers Multiple Line Insurance Co.*, 796 S.W.2d 660 (Mo.App.W.D. 1990).

Furthermore, it matters not whether the "regulatory law" of a state is found in statute or in case law. This was resolved by the U.S. Supreme Court in *UNUM Life Ins. Co. v. Ward*, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999) where the Court held that California's common law rule regarding "notice-prejudice" was "saved" and therefore applicable to commercial insurers providing insurance through employers.

Footnote 1 of *UNUM Life Ins. Co.* specifically addressed the matter of "common law."

Footnote 1, in its entirety, is set forth here:

> Common–law rules developed by decisions of state courts are "State law" under ERISA. See 29 U.S.C. § 1144(c)(1) ("The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law.").

Accordingly, the law of Missouri, which is founded upon sound public policy, which prohibits subrogation on personal injury claims is applicable to plaintiff's claim.

## X.   Conclusion

The Plaintiff's complaint fails to state a claim on four separate grounds as set forth above. Each one of these grounds provides an adequate basis, in and of itself, to warrant dismissal.

WHEREFORE, Defendants pray this Court dismiss the complaint filed herein.

/s/ Walter L. Floyd
Walter L. Floyd
Attorney for Defendants,
Linda Thurmon and
The Floyd Law Firm, P.C.
8151 Clayton Road, Suite 202
St. Louis, Missouri 63117
314-863-4114
314-863-4150 Fax
walter@thefloydlawfirm.com

## CERTIFICATE OF MAILING

      I hereby certify that a copy of the foregoing document was filed electronically with the Clerk of the Court this 23rd day of September, 2009 to be served by operation of the Court's electronic filing system upon the following: Amy L. Nixon, Esq., Littler Mendelson, Two City Place, Drive, Suite 200, St. Louis, Missouri 63141, and to Noah G. Lipschultz, Esq., Littler Mendelson, 80 South 8th Street, Suite 1300, Minneapolis, Minnesota 55402, Attorneys for Plaintiff.

                                                /s/ Walter L. Floyd