```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


THE BOEING COMPANY,            )
                               )
           Plaintiff,          )
                               )
      v.                       )       No. 4:09 CV 1456 DDN
                               )
 LINDA THURMON, et al.,        )
                               )
           Defendants.         )
```

**MEMORANDUM AND ORDER**

This action is before the court on the motion of defendants Linda Thurmon and The Floyd Law Firm, P.C. to dismiss for failure to state a claim. (Doc. 6.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court held a hearing on December 4, 2009.

### I. BACKGROUND

On September 11, 2009, plaintiff The Boeing Company (Boeing) commenced this action against Linda Thurmon (Thurmon) and The Floyd Law Firm, P.C. (Floyd) under the Employee Retirement Income Security Act (ERISA). (Doc. 1.) According to the complaint, Boeing is the sponsor and fiduciary of the company's Represented Active HMO (plan). (Id. at ¶ 4.) Boeing alleges that this plan provides welfare benefits, including medical benefits, to Boeing employees and their dependants. (Id. at ¶ 7.) Boeing further alleges that the plan is self-funded. (Id.)

According to the complaint, Thurmon was injured in a car accident on January 20, 2007. (Id. at ¶ 14.) Boeing alleges that the plan paid $65,208.73 in medical expenses for Thurmon's injuries. (Id. at ¶ 15.) Boeing further alleges that the plan paid these benefits under the condition that Thurmon would reimburse the plan for these expenses, if she received a recovery from any third party. (Id. at ¶ 16.) According to the complaint, the plan and the summary plan description (SPD) advise beneficiaries of the plan's right to be reimbursed in the case of a third-party recovery. (Id. at ¶¶ 9-13.)

After the accident, Thurmon allegedly hired Floyd to pursue a lawsuit on her behalf. (Id. at ¶ 17.) Boeing further alleges that Thurmon's lawsuit settled, that Floyd gave part of the settlement money to Thurmon, and that Thurmon subsequently spent the settlement money. (Id. at ¶ 21.) Boeing also alleges that Floyd retained a portion of the settlement proceeds. (Id. at ¶ 24.)

In Count I of the complaint, Boeing asserts a claim for equitable relief under § 502(a)(3) of ERISA. (Id. at ¶¶ 27-32.) As part of Count I, Boeing alleges that Thurmon and Floyd have unjustly refused to reimburse the plan for its payment of $65,208.73. (Id.) Boeing seeks to recover this payment, plus interest, through a constructive trust or equitable lien. (Id. at 6.)

## II. MOTION TO DISMISS

Thurmon and Floyd move to dismiss the complaint. (Doc. 6.) First, they argue that neither the plan nor the SPD creates a contractual lien. Second, they argue that Boeing's claim is not against a specifically identifiable fund. Third, they argue that the plan language overreaches by targeting general assets, and fails to satisfy the criteria for "appropriate equitable relief." Fourth, they argue that Missouri law prohibits subrogation on personal injury claims, and that under ERISA, HMOs continue to be subject to state regulatory law. (Docs. 6, 9.)

In response, Boeing argues that the language of the plan satisfies ERISA's requirements for creating an equitable lien. In particular, Boeing argues that the plan language identifies a specific fund, and identifies a particular share to which the plan is entitled. In fact, Boeing notes that it does not seek a full recovery; only the amount of the settlement. Finally, Boeing argues that ERISA preempts Missouri subrogation law. (Doc. 8.)

## III. MOTION TO DISMISS STANDARD

The defendants move to dismiss the case for failure to state a claim upon which relief can be granted under Rule 12(b)(6). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint. <u>Leatherman v. Tarrant County Narcotics Intelligence &</u>

Coordination Unit, 507 U.S. 163, 164 (1993); Holden Farms, Inc. v. Hog Slat, Inc., 347 F.3d 1055, 1059 (8th Cir. 2003). In 2007, the Supreme Court issued a new standard for evaluating motions to dismiss. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (overruling the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Despite overruling the Conley standard, the Supreme Court cautioned that it had not created a heightened pleading standard. Bell Atlantic, 550 U.S. at 569 n.14, 570.

Under Bell Atlantic, a complaint must include enough facts to state a claim for relief that is plausible on its face. Id. at 570. If the claims are merely conceivable - but not plausible - the court must dismiss the complaint. Id. To meet the plausibility standard, the complaint must contain "more than labels and conclusions." Id. at 555. A complaint does not, however, need specific facts; a complaint only needs to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam). The Federal Rules of Civil Procedure demand only that a complaint present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That said, the allegations must still be enough to "raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555.

A complaint must be liberally construed in the light most favorable to the plaintiff. See id. Moreover, a court must accept the facts alleged as true, even if doubtful. Id. Thus, a well-pled complaint may proceed even if it appears the recovery is very remote or unlikely. Id. To warrant dismissal, the plaintiff's entitlement to relief must fall short of being plausible. Id. at 569 n.14, 570.

## IV. DISCUSSION

Under ERISA, a fiduciary may bring a civil action to "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

The term "equitable relief" includes a claim for restitution, but only in certain circumstances, and depending on the basis of the plaintiff's claim. Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 212-13 (2002). Restitution is a legal remedy when the plaintiff seeks to impose personal liability on the defendant for a contractual obligation to pay money. Id. at 210. Restitution is an equitable remedy when the plaintiff seeks to impose a constructive trust or equitable lien on "particular funds or property in the defendant's possession." Id. at 213. To impose a constructive lien by agreement, the plan must (1) identify a particular fund, that is distinct from the beneficiary's general assets, and (2) specify the particular share or portion of the fund to which it is entitled. Sereboff v. Mid Atl. Medical Servs., Inc., 547 U.S. 356, 364 (2006); Admin. Comm. for Wal-Mart Stores, Inc. Assocs.' Welfare Plan v. Salazar, 525 F. Supp. 2d 1103, 1111 (D. Ariz. 2007).

**Particular Fund Requirement**

To sound in equity, the plan must identify a particular fund from which it will be reimbursed. Sereboff, 547 U.S. at 364. The plan cannot seek to recover from the beneficiary's general assets. Id. It cannot use a clause that triggers a general reimbursement. See James River Coal Co. Medical and Dental Plans v. Bentley, --- F. Supp. 2d ----, Civil Action No. 09-13-ART, 2009 WL 2211906, at *2 (E.D. Ky. July 23, 2009).

Whether the plan targets a particular fund or only general assets depends on the specific language of the plan at issue. In some instances, courts have found the plan language specified a particular fund. In Sereboff, the plan claimed a right to "'all recoveries from a third party (whether by lawsuit, settlement, or otherwise).'" Sereboff, 547 U.S. at 364. In Kolt, the plan claimed the right to recover "upon the proceeds of any recovery by you or your Dependent(s) from such [third] party. . . ." Longaberger Co. v. Kolt, No. 08-4432, 2009 WL 3806079, at *2 (6th Cir. Nov. 16, 2009). In Popowski, one of the plans claimed the right to "'recovery made from the third party or insurer.'" Popowski v. Parrott, 461 F.3d 1367, 1373 (11th Cir. 2006).

In Taque, the plan claimed the right to "'subrogation and reimbursement from any other source.'" Pioneer Title Co. Employee Welfare Benefit Trust v. Taque, No. 1:08 CV 461 BLW, 2009 WL 1687966, at *2 (D. Idaho June 17, 2009). In Taylor, the plan claimed the right to "'first reimbursement from any recovery a covered Member receives, even if the covered Member has not been made whole.'" Fleetwood Enters., Inc. v. Taylor, No. 5:06 CV 124-R, 2007 WL 2826180, at *4 (W.D. Ky. Sept. 28, 2007). In Salazar, the plan claimed the right to recover "'any funds recovered from another party, by or on behalf of the estate of any covered person.'" Salazar, 525 F. Supp. 2d at 1111 n.6. In each of these cases, the courts found the language of the plan identified a particular fund, having stated from where the funds would be recovered. Sereboff, 547 U.S. at 364; Kolt, 2009 WL 3806079, at *6; Popowski, 461 F.3d at 1373; Taque, 2009 WL 1687966, at *5; Taylor, 2007 WL 2826180, at *4; Salazar, 525 F. Supp. 2d at 1111.

In other instances, courts have found the plan language did not specify a particular fund. In Popowski, one of the plans claimed the right to reimbursement "'in full, and in first priority, for any medical expenses paid by the Plan relating to the injury or illness.'" Popowski, 461 F.3d at 1371. In Bentley, the plan mandated that the beneficiary "'promptly reimburse the Plan when the recovery is received until the Plan has been fully reimbursed for benefits it paid for or provided.'" Bentley, 2009 WL 2211906, at *3. In each of these cases, the courts found the language of the plan failed to specify that reimbursement was limited to a particular fund. Popowski, 461 F.3d at 1374; see also id. ("The Plan does not specify that it is to be reimbursed only from the proceeds of the recovery. . . .") (emphasis added).

In this case, the Boeing plan states, in relevant part,

> **Subrogation and Reimbursement**
> Subrogation is the substitution of one person or entity in the place of another with reference to a lawful claim, demand or right. If you receive a Benefit payment from the Plan for an Injury caused by a third party, and you later receive any payment for that same condition or Injury from another person, organization or insurance company, we have the right

> to recover any payments made by the Plan to you. This process of recovering earlier payments is called subrogation.
>
> ...
>
> We shall be subrogated to and shall succeed to all rights of recovery, under any legal theory of any type, for the reasonable value of services and Benefits we provided to you from any or all of the following:
>
> - Third parties, including any person alleged to have caused you to suffer injuries or damages.
> - Your employer.
> - Any person or entity obligated to provide benefits or payments to you, including benefits or payments for underinsured or uninsured motorist protection (these third parties and persons or entities are collectively referred to as "Third Parties").
>
> You agree as follows:
>
> - To assign to us all rights of recovery against Third Parties, to the extent of the reasonable value of services and Benefits we provided, plus reasonable costs of collection.
>
>   ...
>
> - That our rights will be considered as the first priority claim against Third Parties, to be paid before any other of your claims are paid.
>
>   ...
>
> - That regardless of whether or not you have been fully compensated, we may collect from the proceeds of any full or partial recovery that you or your legal representative obtain, whether in the form of a settlement (either before or after any determination of liability) or judgment, the reasonable value of services provided under the Plan.

(Doc. 1, Ex. A at 59.)

The Boeing plan claims the right to recover "<u>from the proceeds of any full or partial recovery</u>" that the beneficiary obtains. (<u>Id.</u>) (emphasis added). In <u>Bentley</u>, the court faulted the plan for failing to specify that it would be reimbursed "only from the proceeds of the recovery. . . ." <u>Bentley</u>, 2009 WL 2211906, at *3. But in this case, the plan does just that. Looking to <u>Sereboff</u> and its progeny, the

Boeing plan has identified a particular fund from which it will be reimbursed, distinct from the beneficiary's general assets.

**Particular Share Requirement**

To sound in equity, the plan must identify a particular share of the fund to which the fiduciary is entitled. Sereboff, 547 U.S. at 364. The plan cannot simply seek reimbursement "in full." Popowski, 461 F.3d at 1374. Whether the plan targets a particular share of the fund or simply seeks complete reimbursement depends on the specific language of the plan at issue.

In some instances, courts have found the plan language identified a particular share of the fund. In Sereboff, the plan claimed a right to "'that portion of the total recovery which is due [the fiduciary] for benefits paid.'" Sereboff, 547 U.S. at 364. In Kolt, the plan claimed the right to recover "any benefits provided to you or your Dependent(s) by the Plan.'" Kolt, 2009 WL 3806079, at *2. In Popowski, one of the plans claimed reimbursement from "'the benefits paid on his or her behalf out of the recovery made from the third party or insurer.'" Popowski, 461 F.3d at 1371. In Taque, the plan stated that if it paid for "'any medical expenses of a Covered Person, then the [Plan] is subrogated to the rights of the Covered Person and is entitled to reimbursement.'" Taque, 2009 WL 1687966, at *2. In Salazar, the plan claimed the right to "'[r]ecover or subrogate 100% of the benefits paid, or to be paid, by the Plan for covered persons.'" Salazar, 525 F. Supp. 2d at 1112 n.7. In each of these cases, the court found the language of the plan was limited to a particular share of the fund - namely the benefits already paid out by the plan. Sereboff, 547 U.S. at 364; Kolt, 2009 WL 3806079, at *6; Popowski, 461 F.3d at 1373; Taque, 2009 WL 1687966, at *5; Salazar, 525 F. Supp. 2d at 1112.

In other instances, courts have found the plan language failed to specify the portion due the plan. In Popowski, one of the plans claimed a right to reimbursement "'in full, and in first priority, for any medical expenses paid by the Plan relating to the injury or illness.'" Popowski, 461 F.3d at 1371. In Bentley, the plan claimed a right to be "'fully reimbursed for benefits it paid for or provided.'" Bentley,

2009 WL 2211906, at *3. In Taylor, the plan claimed the "'right of first reimbursement from any recovery a covered Member receives, even if the covered Member has not been made whole.'" Taylor, 2007 WL 2826180, at *4. In each of these cases, the courts found the plan failed to limit recovery to a specific portion of a particular fund. Popowski, 461 F.3d at 1374; Bentley, 2009 WL 2211906, at *3; Taylor, 2007 WL 2826180, at *4.

In this case, the Boeing plan claims the right to recover the "reasonable value of services and Benefits we provided to you" and "the reasonable value of services provided under the Plan." (Doc. 1, Ex. A at 61.) By this language, the plan seeks only to recover the value of the benefits it has already paid out. Looking to Sereboff and its progeny, the Boeing plan identifies a particular share of the fund to which the fiduciary is entitled.

The Boeing plan identifies a particular fund, that is distinct from the beneficiary's general assets, and specifies the particular share of the fund to which it is entitled. The language of the plan therefore states a claim for "appropriate equitable relief" under § 1132(a)(3), and is sufficient to create an equitable lien. Popowski, 461 F.3d at 1373; Salazar, 525 F. Supp. 2d at 1112. There is no requirement that the plan specifically refer to an "equitable lien," when discussing its right to reimbursement. See id. at 1112 n.9.

**Subrogation Laws**

The insurance laws of most states prevent an insurer that has made a payment to an injured insured from enforcing its subrogation rights until the insured has been fully compensated for her injury. Waller v. Hormel Foods Corp., 120 F.3d 138, 139 (8th Cir. 1997). However, "ERISA preempts any state law that would otherwise override the subrogation provision" in a self-insured or self-funded plan. Id. (citing FMC Corp. v. Holliday, 498 U.S. 52 (1990)); see also Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 372 n.6 (2002) (noting that ERISA's deemer clause prohibits states from regulating self-funded plans as insurers). Simply put, as long as the plan documents explicitly grant the right, ERISA allows employers with self-insurance plans "to obtain subrogation rights

in a personal injury claim by an insured against a third party. . . ." Hays v. Mo. Highways and Transp. Comm'n, 62 S.W.3d 538, 540-41 (Mo. Ct. App. 2001) (citing Holliday, 498 U.S. at 56-58).

In this case, Boeing has alleged that the plan is self-funded and governed by ERISA. (Doc. 1 at ¶¶ 4, 7.) The plan itself contains an explicit subrogation and reimbursement provision. (Doc. 1, Ex. A at 61.) Taken together, ERISA preempts any Missouri law on subrogation, and the language of the plan controls. See S.D. State Med. Holding Co. v. Hofer, Civ. No. 06-5038-KES, 2007 WL 2121276, at *6 (D.S.D. July 24, 2007) ("Because this action falls within the ambit of ERISA, the explicit intentions of the parties regarding subrogation are controlling.").

Thurmon argues that the plan is not truly self-funded. (Doc. 9 at ¶ 12.) An employee benefit plan may be self-funded, self-insured, fully insured, or some combination thereof. Am. Med. Sec., Inc. v. Bartlett, 915 F. Supp. 740, 742 (D. Md. 1996), aff'd, 111 F.3d 358 (4th Cir. 1997). A plan is self-funded if it pays benefits out of a pool of money collected from the plan's own funds, from employee contributions, or from both. Id. A plan is self-insured if it pays benefits out of its own funds, but the money comes from the employer's general funds and not from a separate pool. Id. For preemption purposes, there is no distinction between a self-funded plan and a self-insured plan. Id. at 742 n.2. A plan is fully insured if it purchases an insurance policy from an insurance company in order to fund its benefits. Holliday, 498 U.S. at 54; Id. at 742. The purchase of stop-loss insurance does not change a plan's status; it does "not convert a self-funded or self-insured employee benefit plan into a fully insured plan for preemption purposes." Bartlett, 915 F. Supp. at 742; see also Bill Gray Enters., Inc. Employee Health and Welfare Plan v. Gourley, 248 F.3d 206, 214 (3d Cir. 2001) ("[W]hen an ERISA plan purchases stop-loss insurance but does not otherwise delegate its financial responsibilities to another third party insurer, it remains an uninsured self-funded welfare plan for ERISA preemption purposes.").

For the present motion, the court must accept as true the plaintiff's allegation that the plan is self-funded. Bell Atlantic, 550

U.S. at 555. However, Thurmon may seek discovery on how the plan operates to determine whether the plan is self-funded or fully-insured, and may renew this argument at the summary judgment stage.

## V.  CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of defendants Linda Thurmon and The Floyd Law Firm, P.C., to dismiss for failure to state a claim (Doc. 6) is denied.

```
   /S/    David D. Noce
```
**UNITED STATES MAGISTRATE JUDGE**

Signed on December 7, 2009.